**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephanie Stephens,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>State of Arizona, et al.,<br><br>　　　　　Defendants. | No. CV-22-01605-PHX-DJH<br><br>**ORDER** |

Defendants State of Arizona, Mike Faust, Clara Harwood, and Chantel Madson (the "State Defendants") seek to dismiss, under Federal Rule of Civil Procedure 12(b)(6), all counts in Plaintiff Stephanie Stephens' ("Plaintiff") First Amended Complaint ("FAC") (Doc. 4).[1] Defendant Conchetta Oglesby ("Oglesby") also filed a Motion to Dismiss Plaintiff's FAC (Doc. 22), incorporating and referencing all arguments set forth in the State Defendants' Motion (Doc. 4).

The Court finds the doctrine of qualified immunity and and the statute of limitations bars Plaintiff's 42 U.S.C. § 1983 due process claim. The Court accordingly grants the Motions to Dismiss.

**I.　　Background**[2]

This case stems from the removal of Plaintiff's two children from their home by

---

[1] The Motion is fully briefed. (Docs. 16; 17).

[2] Unless otherwise noted, these facts are taken from Plaintiff's FAC (Doc. 1-3). The Court will assume the FAC's factual allegations are true, as it must in evaluating a motion to dismiss. *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

Arizona Department of Child Safety ("DCS") employees and the subsequent juvenile protection proceedings. (Doc. 1-3 ("FAC") at 72-90, ¶ 12). On June 8, 2022, Plaintiff filed her original Complaint in the Superior Court of Arizona in Maricopa County. (*Id.* at 20). Plaintiff filed her FAC on September 9, 2022, adding a 42 U.S.C. § 1983 claim, alleging the State Defendants violated Plaintiff's procedural and substantive due process rights under the Fourth and Fourteenth Amendments. (*Id.* at 85–90). On September 21, 2022, the Court received the State Defendants' Notice of Removal from the Maricopa County Superior Court under 28 U.S.C. §§ 1441(a) and 1446. (Doc. 1 at 1).

### A. The Parties

Defendants Oglesby, Clara Harwood, and Chantel Madson (collectively the "Individual Defendants") are DCS case workers or supervisors who were involved in the two children's removal. Plaintiff also alleges state law claims against the State of Arizona. (FAC at 81–85).

### B. Family Court and Juvenile Court Orders

This case arises from a custody battle between Plaintiff and her ex-husband (the "father"). (FAC at 74, ¶ 15). The proceedings include two family court orders issued by different judges and a juvenile court order. (*Id.* at ¶¶ 15–65).

On February 14, 2020, Judge Scott Blaney of the Maricopa County Superior Court ("family court"), on its own motion, entered temporary orders finding the father was manipulating the children to alienate them from Plaintiff.[3] (*Id.* at 74, ¶ 16). In March, the family court awarded Plaintiff physical custody of her children. (*Id.* at ¶ 18).

### C. Oglesby's Declaration to Judge Rodney Mitchell

On April 9, 2020, DCS sought an order from Judge Rodney Mitchell of the Maricopa County Superior Court ("Judge Mitchell") revoking Plaintiff's custody of the children pursuant to A.R.S. § 8-821(A). (*Id.* at 75, ¶ 20). Oglesby, one of the case workers, submitted a declaration in support of the petition. (*Id.*). Plaintiff alleges the declaration contained "one or more misrepresentations or omissions material to the

---

[3] Case No. FC 2017-002028

finding of probable cause to take custody of the children away from [Plaintiff]" and that Oglesby "made those misrepresentations or omissions either intentionally or with reckless disregard for the truth." (*Id.* at ¶ 22). Plaintiff specifically alleges that Oglesby failed to include the following material information in her declaration:

- that law enforcement determined the father's allegation that Plaintiff's significant other was "brandishing a weapon" was unfounded;
- that the family court found the children's statements that they "were fearful of and abused by [Plaintiff's significant other]," were not credible;
- that the allegation that Plaintiff's significant other touched one of the children was unsubstantiated; and
- that the family court granted Plaintiff custody because the father was hiding the children from Plaintiff and avoiding service.

(*Id.* at ¶¶ 24–27). Plaintiff also says the declaration contained no mention that the children's father was "alienating" the children from Plaintiff or that he was potentially "coercing" them to make false allegations against her. (*Id.* at ¶ 21).

That same day, Judge Mitchell issued an order based on the declaration that authorized DCS to remove the children from both Plaintiff and the father's custody and control. (*Id.* at ¶ 29).

**D. Individual Defendants' Dependency Petition to Juvenile Court**

On April 14, 2020, DCS filed a dependency petition in juvenile court based on the declaration. (*Id.* at ¶ 30). At the dependency hearing, Oglesby admitted it "had crossed her mind that the father was coaching the girls to make allegations against [Plaintiff]." (*Id.* at ¶ 34). On July 9, 2020, the juvenile court found that dependency existed as to Plaintiff. (*Id.* at ¶ 40). Plaintiff appealed, and the Arizona Court of Appeals affirmed. (*Id.* at ¶ 32–34).

**E. New Court Report**

On March 10, 2021, the Individual Defendants submitted a court report that provided new information unavailable during the dependency adjudication in July 2020.

(*Id.* at ¶ 46).  Therein, the Individual Defendants stated the children disclosed they were coached by the father to lie about Plaintiff and her significant other.  (*Id.* at ¶ 47).  The juvenile court then suspended the children's visitations with the father.  (*Id.* at ¶ 50).  It also terminated the dependency on June 22, 2021.  (*Id.* at ¶ 55).  It further vacated the reasons for the dependency regarding the children on July 15, 2021.  (*Id.* at ¶ 56).

### F. Plaintiff's FAC

In her FAC, Plaintiff alleges five Counts against Defendants: Count I for wrongful prosecution of a civil action (Doc. 1-3 at ¶¶ 66–83); Count II for negligent hiring, retention or supervision (*Id.* at ¶¶ 84–89); Count III for intentional interference with parental custody of a child (*Id.* at ¶¶ 90–99); Count IV for negligence (*Id.* at ¶¶ 100–105); and Count V for interference with parental custody claim under 42 U.S.C. §1983 (*Id.* at ¶¶ 106–139).

Plaintiff alleges Judge Mitchell's decision to revoke her custody turned on the "key fact[]" that "[Plaintiff] did not believe [that] the allegations asserted against her and [her significant other] by her children were true." (*Id.* at ¶ 36).  Plaintiff alleges that before the Individual Defendants filed a dependency petition, they should have conducted a forensic interview of the children to determine whether the stories "were made up or true." (*Id.* at ¶¶ 33, 37).  Plaintiff alleges the Individual Defendants refusal to conduct the forensic interviews of the children and failure include the material findings from her family court matter in Oglesby's declaration resulted in wrongful removal of the children because had those things occurred, there would have been no probable cause to revoke custody.  (*Id.* at ¶ 22).

Defendants seek to dismiss these claims under Rule 12(b)(6), arguing (1) the statute of limitations ("SOL") has expired on all counts; (2) Plaintiff failed to file a timely Notice of Claim ("NOC") for the state law claims; (3) all Defendants are entitled to absolute and/or qualified immunity; and (4) the lawsuit is an impermissible appeal of the state court judgments.  (Doc. 4 at 1-2).  They argue for dismissal with prejudice because the defects cannot be cured.  (*Id.*)

## II. Legal Standards

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Complaints must make a short and plain statement showing that the pleader is entitled to relief for its claims. Fed. R. Civ. P. 8(a)(2). This standard does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not generally require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In addition, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Dismissal of a complaint for failure to state a claim may be based on either the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a motion to dismiss, courts will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not required "to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. Discussion

As discussed, Plaintiff brings five counts—Counts I through IV are state law

claims and Count V is a § 1983 claim. The State Defendants move for dismissal of all the claims. The Court will first consider Plaintiff's § 1983 claim and then consider her state law claims.

### A. Federal § 1983 Claim[4]

The Individual Defendants argue the FAC should be dismissed because they are entitled to absolute and/or qualified immunity. (Doc. 4 at 10). The Individual Defendants further argue Plaintiff's Section 1983 claim is barred by the statute of limitations. (*Id.* at 5–9).

#### 1. Absolute Immunity

The Individual Defendants argue that they are entitled to absolute immunity as caseworkers participating in juvenile court proceedings. (*Id.* at 11). Plaintiff argues social workers are not entitled to absolute immunity regarding their investigative conduct and actions in obtaining a court order to take children into custody based on misleading or false information provided in a declaration. (Doc. 16 at 15).

Parties to § 1983 suits are generally entitled only to immunities that existed at common law. *Imbler v. Pachtman*, 424 U.S. 409, 417–18 (1976). The Ninth Circuit has therefore "granted state actors absolute immunity only for those functions that were critical to the judicial process itself," such as "'initiating a prosecution.'" *Miller v. Gammie*, 335 F.3d 889, 896 (9th Cir. 2003) (en banc) (quoting *Imbler*, 424 U.S. at 431). To that end, it is true that social workers have absolute immunity when they make "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents." *Id.* at 898. However, social workers are not entitled to absolute immunity from claims "that they fabricated evidence during an investigation or made false statements in a dependency petition affidavit that they signed under penalty of perjury, because such actions are [not] similar to discretionary decisions about whether to

---

[4] It is unclear whether the FAC alleges a § 1983 claim against the State of Arizona. (FAC at 85). Regardless, it is well established the State of Arizona is not a "person" under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, to the extent Plaintiff alleges a Section 1983 claim against the State, it must be dismissed.

- 6 -

prosecute." *Beltran v. Santa Clara Cnty.*, 514 F.3d 906, 908 (9th Cir. 2008).

Plaintiff claims the declaration Oglesby submitted to Judge Mitchell in support of an order to revoke custody from Plaintiff contained "one or more misrepresentations or omissions material to the finding of probable cause . . . ." (Doc. 1-3 at ¶ 22). Among other things, Plaintiff claims the Individual Defendants did not mention that the father "was alienating the Children against [Plaintiff] and potentially [] coercing the children to make false allegations against [Plaintiff]." (*Id.* at ¶ 21). Plaintiff alleges the Individual Defendants knowingly and maliciously withheld this information from Judge Mitchell. (*Id.* at ¶¶ 12, 38). Plaintiff's allegation appears to fall squarely within the rule that social workers are not entitled to absolute immunity for "fabricated evidence during an investigation" or "false statements in a dependency petition affidavit." *Beltran*, 514 F.3d at 908. Thus, the Individual Defendants are not entitled to absolute immunity.

### 2. Qualified Immunity

The State Defendants argue if they are not entitled to absolute immunity, then they are entitled to qualified immunity. (Doc. 4 at 11–12). Plaintiff argues a parent's right to the custody and control of their children is well established under the Due Process Clause of the Fourteenth Amendment and that the omissions in the declaration submitted by Oglesby were material to the findings of probable cause. (Doc. 16 at 15).

Qualified immunity shields federal and state officials from money damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). If a public official pleads qualified immunity, plaintiff bears the burden of proving that both prongs are met. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 946 (2017). Courts may exercise discretion in deciding which prong to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court will begin with the second prong—that is, whether Plaintiff has met her burden to show that the law was clearly established at the time of the Individual Defendants' alleged violation. *See Davis v. Scherer*, 468 U.S. 183, 197–98 (1984).

Resolving "claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). Courts assessing a motion to dismiss based on qualified immunity must "consider whether the complaint alleges specific facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable [official] would be aware 'in light of the specific context of the case.'" *Id.* at 1235 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Plaintiff bears the burden of establishing that the right allegedly violated was clearly established at the time of the alleged misconduct. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991). "If a plaintiff fails to allege a violation of a clearly established law, the court need not even reach the other issues presented regarding qualified immunity." *Knox v. Sw. Airlines*, 124 F.3d 1103, 1107 (9th Cir. 1997).

A plaintiff may bring a claim of interference with the parent-child relationship in violation of the Fourteenth Amendment as either a procedural due process claim or a substantive due process claim. *See Smith v. City of Fontana*, 818 F.2d 1411, 1419-20 (9th Cir. 1987), *overruled on other grounds by Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999) (en banc).

A procedural due process claim typically arises when a state official removes a child from a parent's care. For such claims, "[t]he Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." *Rogers v. County of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007) (quoting *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001)). Removing a child from a parent's custody violates the Fourteenth Amendment unless the removal (1) is authorized by a court order, i.e., a warrant; or (2) is supported by "reasonable cause to believe that the child is in imminent danger of serious bodily injury," and the scope of intrusion does not extend beyond that which is reasonably necessary. *Id.* (quoting *Mabe*, 237 F.3d at 1106).

Even if a court order authorized the removal, the right may be violated if the court

order was obtained through judicial deception, that is, if a plaintiff alleges "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial deception." *David v. Kaulukukui*, 38 F.4th 792 (9th Cir. 2022). "A misrepresentation or omission is material if a court would have declined to issue the order had [the defendant] been truthful." *Id.*

A substantive due process claim of impermissible interference with familial association arises when a state official harms a parent or child in a manner that shocks the conscience. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation. *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). The Court will begin with Plaintiff's procedural due process claim and then move to her substantive due process claim.

### a. Procedural Due Process

Plaintiff seems to allege that had Judge Blaney's findings about the father been included in the declaration and/or a forensic interview of the children taken place before the declaration was filed, there would not have been probable cause to remove the children from Plaintiff's custody. (FAC at 87, ¶ 117; 88 ¶ 127). The Court will consider both allegations.

A procedural due process claim includes two elements: "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "While the right to due process is 'clearly established' by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100 (9th Cir. 1995). Instead, "[t]he right the official is alleged to have violated must be made specific in regard to the kind of action complained of for the constitutional right at issue to have been clearly established." *Id.* at 1100–01. Thus, "the law regarding procedural due process claims 'can rarely be considered clearly established at least in the

absence of closely corresponding factual and legal precedent.'" *Brewster*, 149 F.3d at 983 (quoting *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989)).

### i. Judicial deception by omission

"[J]udicial deception may not be employed to obtain a search warrant." *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). To demonstrate that a social worker obtained a warrant through judicial deception, a plaintiff must show "that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (quoting *KRL*, 384 F.3d at 1117); *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002).

"Omissions or misstatements resulting from negligence or good faith mistakes will not invalidate an affidavit which on its face establishes probable cause," and a claim of judicial deception likewise may not be based on an [official's] erroneous assumptions about the evidence he has received. *United States v. Smith*, 588 F.2d 737, 739-40 (9th Cir. 1978). If an official "omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, established probable cause." *Id.* Probable cause means "there is a fair probability that [] evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Plaintiff claims the declaration submitted by Oglesby to Judge Mitchell did not mention the father "was alienating the Children against [Plaintiff] and potentially [] coercing the children to make false allegations against [Plaintiff]." (FAC at 75, ¶ 21). Plaintiff further alleges Oglesby "was aware [the] Father was not returning the children to [Plaintiff] and avoiding service of process." (*Id.* at 75, ¶ 19).

Even taking Plaintiff's allegations as true, she has not alleged that Oglesby had knowledge of Judge Blaney's findings that the father was manipulating the children. In order to show Oglesby "deliberately misle[d] [Judge Mitchell]," Oglesby necessarily must have known of Judge Blaney's findings and intentionally decided not to discuss

them in the declaration or bring it to Judge Mitchell's attention. *Kaulukukui*, 38 F.4th at 801. Nowhere in the FAC, however, does Plaintiff allege Oglesby had knowledge of Judge Blaney's findings about the father's manipulation of the children.[5] Oglesby's knowledge that the father was not returning the children and avoiding service of process does not mean she knew the father was manipulating them to make false allegations against Plaintiff. (FAC at 75, ¶ 19).

Plaintiff does allege that Oglesby later admitted at the dependency hearing on July 9, 2020, that "it had crossed her mind that [the] Father was coaching the girls to make the allegations against [Plaintiff]." (FAC at 77, ¶¶ 34, 40). But her admission occurred after she submitted her declaration and during the subsequent dependency proceedings. (*Id.*) At best, then, these allegations show Oglesby may have had some suspicion about the father's tactics, but the Court does not find these facts sufficient to show she deliberately or recklessly omitted this information from her declaration. Accordingly, based on these allegations, the Court cannot conclude that the FAC plausibly alleges that Oglesby deliberately made a "misrepresentation or omission" to a court of law. *Benavidez*, 993 F.3d at 1147.

### ii. Failure to conduct forensic interviews

Plaintiff also alleges that her procedural due process rights were violated when Individual Defendants did not conduct forensic interviews of the children before submitting a declaration to Judge Mitchell. (FAC at 77, ¶ 37). But an official cannot be said to have violated a clearly established right unless, "at the time of the [official's] conduct, the law was 'sufficiently clear that every reasonable official would understand that what he is doing' is unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *al-Kidd*, 563 U.S. at 741). The Ninth Circuit has stated a case need not

---

[5] Plaintiff's broad allegation that Oglesby "knowingly and maliciously withheld material information from Judge Mitchell" (FAC at 74, ¶ 12) is insufficient under the standard articulated above, which "must be made *specific* in regard to the kind of action complained of for the constitutional right at issue to have been clearly established." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d at 1100–01 (emphasis added); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts need not accept as true "allegations that are merely conclusory").

- 11 -

be "directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Keates*, 883 F.3d at 1239 (quoting *al-Kidd*, 563 U.S. at 741).[6] A plaintiff can also show that a right is clearly established in rare cases when the violation is so obvious that it puts every reasonable officer on notice that the conduct violates the law. *See al-Kidd*, 563 U.S. at 741; *Sharp*, 871 F.3d at 911.

Here, Plaintiff has not and cannot show Individual Defendants would have been on notice of a due process right to conduct forensic interviews of the children before submitting the declaration. The cases Plaintiff cites are inapplicable for such a proposition. (*See* Doc. 16 at 15 citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam) and *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 2000)). First, *Hunter* addressed whether agents were entitled to immunity on the claim that they had arrested the defendant without probable cause. 502 U.S. at 229. The Ninth Circuit found the agents had failed to sustain their burden of establishing qualified immunity because their reason for arresting the defendant—their belief that a person named in the letter, Mr. Image, could be a pseudonym for defendant—was not the most reasonable reading of the defendant's assassination letter. *Id.* at 227. The Court reversed the Ninth Circuit and reasoned that even if it assumed the agents and the judge erred in concluding probable cause existed to arrest the defendant, "the agents nevertheless would be entitled to qualified immunity because their decision was reasonable, even if mistaken." *Id.* at 229.

Second, *Wallis* arose when police officers removed children from their parents without a court order and subjected them to invasive medical examinations. 202 F.3d at 1141. This occurred after a mental patient told a therapist a "fantastic tale of Satanic witchcraft within her family and an impending child sacrifice." *Id.* at 1131. The Ninth Circuit reversed the district court's grant of summary judgment, holding that "a jury could reasonably conclude that the information possessed by the officers was insufficient to give rise to reasonable cause or that the officers' conduct in failing to investigate the

---

[6] "[T]he prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).

1  mental patient's bizarre tale before acting was not reasonable." *Id.* at 1140.

2  Plaintiff must show there is clear precedent that would put an official on notice that what they were doing is unlawful. *Romero*, 931 F.2d at 627). Plaintiff has not done so. Although the cases address the issue of probable cause in those contexts, neither support a finding that the Individual Defendants should have conducted forensic interviews of the children before submitting a declaration when plausible claims of child abuse existed. Thus, it cannot be said that the Individual Defendants had sufficiently fair notice that their behavior was unlawful. Absent such a showing, the violation is not clearly established, and the Individual Defendants are entitled to qualified immunity. *See, e.g.*, *Jones v. Cty. of Los Angeles*, 722 F. App'x 634, 637 (9th Cir. 2018) (granting qualified immunity because there was no clearly established case law that would have provided defendant with "fair warning" that her actions would violate federal constitutional law); *Williams v. Cty. of San Diego*, 2017 WL 6541251, at *8 (S.D. Cal. Dec. 21, 2017) (granting qualified immunity because there was no clearly established case law that interviewing a child at school without the parents' notice or consent violated their Fourteenth Amendment Rights to familial association).

Nor does the Court find this case to be "a sufficiently 'obvious case' of constitutional misconduct" such that courts do not "require a precise factual analogue." *Sharp*, 871 F.3d at 911 ("Except in the rare case of an 'obvious' instance of constitutional misconduct . . . Plaintiffs must "identify a case where an [official] acting under similar circumstances as [defendants] was held to have violated the Fourth Amendment."). In other words, although it is well-settled that Plaintiff's ultimate alleged harm—the loss of her children—implicates a constitutional liberty interest, it not well-settled that there were constitutional violations from Plaintiff's more specific allegations. Thus, Plaintiff has not met her burden of providing any closely corresponding factual or legal precedent that clearly establishes the Individual Defendants' failure to interview the children under these circumstances violates her procedural due process rights.

/ / /

### b. Substantive Due Process

Plaintiff also claims the Individual Defendants violated her substantive due process rights by "taking temporary custody of the Minor Children through Deliberate indifference, i.e., conscious or reckless disregard of the consequences of one's acts or omissions which shocks the conscience." (FAC at 88, ¶ 128). Plaintiff fails to develop this claim in her FAC or in her Response to the Motion to Dismiss. Because Plaintiff has failed to meet her burden of providing an analogous case, Individual Defendants are also entitled to qualified immunity on her substantive due process claim. *See Romero*, 931 F.2d at 627.

In sum, qualified immunity bars Plaintiff's due process claims because neither violation was clearly established at the time of the alleged violation. Plaintiff has not plausibly alleged a judicial deception claim nor established that her other alleged due process rights were clearly established. Accordingly, the Court need not reach whether Plaintiff offered facts establishing that the State Defendants violated her constitutional rights. *See Knox*, 124 F.3d at 1107. Plaintiff's Section 1983 claim must be dismissed.

### 3. Statute of Limitations for Section 1983 Claim

As an alternative basis for dismissal, State Defendants argue that Plaintiff's Section 1983 claim is barred because Plaintiff failed to comply with the two-year statute of limitations set forth in A.R.S. § 12-542.

Section 1983 does not contain its own statute of limitations. Instead, federal courts borrow the forum state's personal injury statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Arizona's statute of limitations for personal injury actions is two years. A.R.S. § 12-542. "Federal law determines when a cause of action accrues and when the statute of limitations begins to run for a § 1983 claim." *Belanus v. Clark*, 796 F.3d 1021, 1025 (9th Cir. 2015). "Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Id.*

The allegations making up Plaintiff's § 1983 claim—Individual Defendants' alleged omissions in obtaining a removal warrant and failure to conduct forensic

interviews of the children before removing them—all occurred more than two years before the Complaint was filed on June 8, 2022. Plaintiff argues that the earliest date the statute of limitations began to run was July 9, 2020, when the Juvenile Court entered the final appealable order of dependency and authorized the children to be held in state custody. (Doc. 16 at 2). Plaintiff fails to explain, however, how the final order alerted her to injury from Oglesby's alleged omissions which resulted in Judge Mitchell's order revoking custody from Plaintiff.

In a similar manner, Plaintiff also argues "[t]he Dependency Petition and its adjudication is the culmination of the Dependency statutory process that begins with the temporary custody order and ends with the dependency adjudication; all of which constitutes a continuing violation or continuing tort and not a continuing ill-effect until the final order is entered." (*Id.*) Arizona law recognizes the continual tort doctrine. That doctrine states that "a tort claim based on a series of related wrongful acts is considered continuous, and accrual begins at the termination of the wrongdoing, rather than at the beginning." *Cruz v. City of Tucson*, 401 P.3d 1018, 1023 (Ariz. Ct. App. 2017). But the question of when a § 1983 claim accrues is determined by federal law—when a plaintiff knows or should know of an injury—not on whether there is continuing harm resulting from that injury. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (holding that "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law"); *see also Wostrel v. Arizona*, 2023 WL 2308417, \*7 (D. Ariz. Mar. 1, 2023) (finding continual tort doctrine "neither here nor there" for determining when a § 1983 claim accrues); *Macias v. Kaplan-Seikmann*, CV-22-00280-PHX-SPL, (D. Ariz. Mar. 27, 2023) (rejecting plaintiffs' argument that accrual for their Section 1983 claim began to run when the dependency proceedings were dismissed). The FAC makes clear that Plaintiff should have known of her injury no later than April 9, 2020, when Judge Mitchell signed his order authorizing DCS to remove the children from Plaintiff and her father's custody based on Oglesby's declaration, which allegedly contained omissions material to the findings of probable cause. (FAC at 75, ¶¶ 20–22). Because

this action was not filed until more than two years later, on June 8, 2022, the Section 1983 claim by Plaintiff will also be dismissed based on the statute of limitations.[7]

### B. State Law Claims and Remand

The FAC contains no other federal causes of action against the Defendants. The remaining claims against the State Defendants—wrongful prosecution, negligent hiring, retention or supervision, intentional interference with parental custody, and negligence—are state law causes of action. (FAC at 81-85, ¶¶ 66–105). In their Reply, the State Defendants argue, for the first time, that these state law claims should also be dismissed on qualified immunity grounds under A.R.S. § 13-3620(J). (Doc. 17 at 8–9). But these state law causes of action fall under the Court's supplemental jurisdiction, which courts normally decline to exercise when the federal claims are dismissed before trial. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). The Court finds it appropriate to decline jurisdiction over the remaining claims, particularly because the remaining legal issue concerns the state's immunity statute. *See Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1046 (9th Cir. 1994) ("When . . . the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over state law claims and dismiss them without prejudice."); *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be dismissed.").

Accordingly,

**IT IS ORDERED** that the Clerk of the Court shall lift the **stay** in this matter.

**IT IS FURTHER ORDERED** that Defendants State of Arizona, Mike Faust, Clara Harwood, and Chantel Madson's Motion to Dismiss (Doc. 4) and Defendant Conchetta Oglesby's Motion to Dismiss (Doc. 22) are **granted, in part**, as to Count V, 42 U.S.C. § 1983. Count V is **dismissed** as to all Defendants.

---

[7] Defendants also raises statute of limitations and notice of claim arguments as to Plaintiff's state law claims but the Court declines to consider whether Plaintiff's state law claims are untimely because it will remand those claims to the state court. (Doc. 4 at 10).

**IT IS FINALLY ORDERED** that the Clerk of Court shall **remand** the remainder of this action to the Maricopa County Superior Court and terminate this case.

Dated this 21st day of June, 2023.

*[signature]*

Honorable Diane J. Humetewa
United States District Judge